**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salvador Reza, | CV 11-01170-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Russell Pearce; Jeff Trapp; John Burton, | |
| Defendants. | |

The court has before it defendant Trapp's motion to dismiss (doc. 12), defendant Burton's motion to dismiss (doc. 13), plaintiff's response in opposition to both motions to dismiss (doc. 21), and Burton's reply (doc. 22). Trapp did not file a reply within the time allotted. Under Rule 6(b)(1)(B), Fed. R. Civ. P., a court may extend a deadline for good cause after time expires "on motion," if a party failed to act due to excusable neglect. Although plaintiff and Trapp filed a stipulation to extend Trapp's reply deadline (doc. 24), this stipulation was not filed until several days after Trapp's filing deadline had passed.

Plaintiff is a United States citizen of Mexican heritage, and a vocal critic of current Arizona State Senate President, defendant Russell Pearce. Defendants Trapp and Burton are DPS officers assigned to the Senate. On February 22, 2011, plaintiff attended a public hearing at the Arizona State Senate building regarding a controversial bill sponsored by defendant Pearce. During the hearing, supporters and opponents of the bill cheered and booed.

1 | Two days later, on February 24, 2011, plaintiff entered the State Senate building. He planned to meet with Senator Steve Gallardo to discuss pending legislation. Soon after he entered the building, plaintiff was approached by Trapp and Burton. The officers told plaintiff that "by order of Senate President Russell Pearce he was no longer allowed inside the Arizona State Senate building" due to "disorderly and disruptive behavior." Compl. at 2. Plaintiff asked the officers to produce documentation confirming that he was banned from the building, but they refused. The officers told plaintiff that he was trespassing. They then arrested plaintiff, placed him in handcuffs, and placed him in a locked room in the Senate building for about one hour. Plaintiff was later transferred to the Maricopa County Jail, where he remained for about five hours. Plaintiff has not been prosecuted for trespassing.

Plaintiff filed this action on June 13, 2011, asserting claims against all defendants pursuant to 42 U.S.C. § 1983. Plaintiff contends that Russell Pearce banned plaintiff from entering the Senate building not due to disruptive behavior during his attendance at the February 22, 2011 hearing, but rather because of his public criticism of Pearce and because of his Mexican ancestry. Plaintiff seeks a declaratory judgment that his rights were violated, injunctions against future violations, and damages. Trapp and Burton move to dismiss the claims against them under Rule 12(b)(6), Fed. R. Civ. P.

Both officers argue that they are entitled to qualified immunity.[1] Qualified immunity shields government officials from liability provided that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (internal quotation omitted). We must consider (1) whether the alleged facts "make out a violation of a constitutional right," and (2) if so, whether the right "was 'clearly established' at the time of defendant's alleged misconduct." Id. at 232, 129 S. Ct. at 816. We may consider these

---

[1] As the factual situation with respect to both officers is identical, we will discuss qualified immunity as collectively applied to both Officer Trapp and Burton ("the Officers").

- 2 -

two steps in any order. Id. at 236, 129 S. Ct. at 818.

The Officers argue that they are entitled to qualified immunity because they were following a facially valid order from Senate President Pearce to exclude plaintiff from the Arizona Senate building. According to the Officers, Pearce is authorized by Senate rules to prohibit disruptive people from entering the building. Thus, according to the Officers, they acted reasonably when they arrested plaintiff for trespassing after he failed to comply with Pearce's facially valid order to leave. Plaintiff argues that at the time of his arrest, the Supreme Court "had clearly established that a citizen has a constitutional right to communicate with an elected official at 'the seat of government.'" Response at 5. Plaintiff argues that the Officers' actions in excluding him from the Senate building, where he came to have a meeting with a state senator, violated his clearly established First Amendment rights, and amounted to false arrest and false imprisonment. Plaintiff asserts that qualified immunity does not apply for two reasons.

First, plaintiff contends that the motions to dismiss cannot be granted because a factual dispute exists between plaintiff's allegations and Pearce's answer to the complaint. According to plaintiff, the claim that the Officers are entitled to qualified immunity because they were just following Pearce's orders fails, because Pearce denies he made the order. But such a dispute is irrelevant to the instant motions, because we "must accept all well-pleaded factual allegations as true" when considering a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. Shwarz v. U.S., 234 F.3d 428, 435 (9th Cir. 2000). Plaintiff's complaint alleges that Pearce issued an order that plaintiff was no longer allowed in the Senate building. We must accept this allegation as true when considering the motions to dismiss.

Next, plaintiff argues that the Officers lacked probable cause to arrest him. Plaintiff first attacks the Officers' reliance on the Arizona Senate Rules as justification for their arrest. Arizona State Senate Rule 2(B) states that the Senate President "shall have control of the Senate Chamber. . . all other parts of the Senate wing and all other areas and buildings used exclusively by the Senate." Rule 2(C) provides that the President "shall preserve and

maintain order and decorum." Senate Rules 2(B)-(C), State of Arizona Senate Rules, Fiftieth Legislature, 2011-2012. Plaintiff argues that these rules do not provide the Senate President with authority over the Senate lobby, because many people use the lobby and thus it is not an area exclusively used by the Senate.[2] But the lobby is part of the Senate wing. Moreover, Rule 2(B) refers to "buildings" used by the Senate, and plaintiff was in the State Senate building. Given these rules, an officer would be reasonable in concluding that Rules 2(B) and 2(C) gave Pearce, the Senate President, authority to exclude plaintiff from the Senate Building, including its lobby, for engaging in disorderly conduct. "[T]he existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994). See also Bilida v. McCleod, 211 F.3d 166, 174 (1st Cir. 2000) ("[p]lausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists"). Senate rules are analogous to enacted statutes and ordinances. The Officers in this case did not act on their own volition in telling plaintiff that he was excluded from the Senate building. Instead, they acted on direct order from the Senate President himself. Plaintiff has not alleged that the Officers knew of or shared defendant Pearce's allegedly racial or political motives for excluding plaintiff. It was therefore objectively reasonable for the Officers to rely on a Senate President's order to exclude disruptive people from the Senate building pursuant to the Senate rules.

Next, plaintiff alleges that the Officers lacked probable cause to believe that plaintiff

---

[2] Plaintiff's complaint does not state that he was in the lobby. Instead, plaintiff alleges that he was approached by the Officers "[s]oon after [plaintiff] entered the State Senate building." Compl. at 2. Viewing the complaint in the light most favorable to the plaintiff, however, it is plausible that plaintiff would still have been in the lobby at the time he was approached.

- 4 -

"violated the law in any way." Response at 7. For plaintiff to prevail on his § 1983 false arrest and imprisonment claims, he must prove that there was no probable cause for the arrest. Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998). An officer is "entitled to qualified immunity on a false arrest claim if a reasonable officer in his position could have believed that probable cause existed." Norse v. City of Santa Cruz, 629 F.3d 966, 978 (9th Cir. 2010). The facts alleged in this case establish that a reasonable officer could have thought that probable cause existed to arrest plaintiff for trespassing.

It is unclear whether plaintiff was arrested for trespass in the second or third degree. In Arizona, a person commits criminal trespass in the third degree by "[k]nowingly entering or remaining unlawfully on any real property after a reasonable request to leave by the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry." A.R.S. § 13-1502(A)(1). A person commits trespass in the second degree "by knowingly entering or remaining unlawfully in or on any nonresidential structure or in any fenced commercial yard." Id. § 13-1503(A). Plaintiff argues that the Officers lacked probable cause because they "immediately claimed that he was trespassing and arrested him without giving him any opportunity to comply with their command [to leave]." Response at 9. The facts pled by plaintiff, which we must accept as true, tell a different story. Plaintiff alleges that after he entered the Senate building he was approached by the Officers, who told him that he was no longer allowed inside due to his disorderly behavior. Notably, plaintiff did not plead that he ever complied with the Officers' order to leave the building. He did not plead that he was physically prevented from leaving. Instead, plaintiff alleges that he remained in the building and spoke with the Officers about his meeting with Senator Gallardo, asked the Officers to produce documents showing that he was banned, and listened to their refusal. It was at that point that the Officers arrested him. Plaintiff had an opportunity to leave the building after being notified he was not allowed to stay. Instead, he chose to remain inside and engage with the Officers.

It was thus objectively reasonable for the Officers to have believed that plaintiff

committed the crime of trespass by staying in the building after being told that he was not lawfully allowed to remain. And, as discussed above, it was objectively reasonable for the Officers to believe that the order of the Senate President to exclude plaintiff from the Senate building was lawful. Thus, the Officers are entitled to qualified immunity on plaintiff's § 1983 claims.

**IT IS ORDERED GRANTING** Trapp's motion to dismiss (doc. 12).

**IT IS ORDERED GRANTING** Burton's motion to dismiss (doc. 13).

DATED this 20th day of October, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge