**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salvador Reza, | CV 11-01170-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Russell Pearce, | |
| Defendant. | |

The court has before it defendant Pearce's motion to dismiss (doc. 35), plaintiff's response (doc. 40), and Pearce's reply (doc. 45).

Plaintiff, a Mexican-American and vocal critic of former Arizona State Senate President Russell Pearce, attended a public hearing relating to a bill co-sponsored by Pearce on February 22, 2011. The hearing was held at the Arizona State Senate building. Although people voiced their support of or opposition to the bill by cheering and booing, plaintiff alleges that he was neither disruptive nor disorderly.

Two days later, plaintiff entered the State Senate building. He had plans to meet privately with another state senator. Plaintiff was approached upon entry by two police officers (former defendants Trapp and Burton), who told him that "by order of Senate President Russell Pearce he was no longer allowed inside the Arizona State Senate building" due to "disorderly and disruptive behavior." Compl. at ¶ 11. Plaintiff was arrested for trespassing. He was not prosecuted.

1    Officers Trapp and Burton were dismissed from this action on October 21, 2011 (doc.
2 25). Plaintiff's § 1983 claims against Pearce remain. Plaintiff contends that Pearce banned
3 plaintiff from entering the Senate building not due to disruptive behavior at the February 22,
4 2011 hearing, but rather because of his public criticism of Pearce and because of his Mexican
5 ancestry. Plaintiff seeks a declaratory judgment, injunctive relief, and damages.

6    Pearce moves to dismiss, arguing that he is entitled to absolute legislative immunity.
7 The Speech or Debate Clause of the United States Constitution "immunizes Congressmen
8 from suits" for acts performed "in the sphere of legitimate legislative activity." Supreme
9 Court of Va. v. Consumers Union of the U.S., Inc., 446 U.S. 719, 731-32, 100 S. Ct. 1967,
10 1974 (1980) (citation omitted). The purpose of cloaking legislative acts with absolute
11 immunity is to ensure that "the legislative function may be performed independently without
12 fear of outside interference." Id. at 731, 100 S. Ct. at 1974. For similar reasons, "state
13 legislators enjoy common-law immunity from liability for their legislative acts." Id. at 732,
14 100 S. Ct. at 1974; see also Bogan v. Scott-Harris, 523 U.S. 44, 49, 118 S. Ct. 966, 970
15 (1998) ("state and regional legislators are entitled to absolute immunity from liability under
16 § 1983 for their legislative activities").

17    To determine whether an act is legislative, we must analyze the "nature of the act"
18 rather than the actor's motive or intent. See Bogan, 523 U.S. at 54, 118 S. Ct. at 973. The
19 Ninth Circuit considers four factors in deciding whether an act is legislative: "(1) whether
20 the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act
21 applies to a few individuals, or to the public at large; (3) whether the act is formally
22 legislative in character; and (4) whether it bears all the hallmarks of traditional legislation."
23 Community House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 960 (9th Cir. 2010) (citation
24 omitted).

25    Pearce argues that the two-part test cited in Schultz v. Sundberg, rather than the
26 factors reaffirmed in Community House, controls. In Schultz, the Ninth Circuit held that a
27 legislator is entitled to absolute immunity for an act that is within the "legitimate legislative
28 sphere" because it is "an integral part of the deliberative and communicative process by

- 2 -

which members participate in committee and house proceedings" and it "address[es] proposed legislation or some other subject within" a legislature's jurisdiction. Schultz v. Sundberg, 759 F.2d 714, 717 (9th Cir. 1985). Pearce contends that the Schultz test provides absolute immunity for "certain actions that are not legislative in nature." Reply at 2. We disagree. Absolute legislative immunity is by definition only available for legislative acts. See Chateaubriand v. Gaspard, 97 F.3d 1218, 1220 (9th Cir. 1996) (absolute immunity does not extend to actions taken by legislators "in their administrative or executive capacities"). The whole purpose of asking whether an act is within the legitimate legislative sphere is to determine whether that act is legislative. Moreover, Schultz was decided pre-Bogan, a decision which prompted a change in the determination of whether an act is legislative. See Bechard v. Rappold, 287 F.3d 827, 829 (9th Cir. 2002) ("in evaluating whether an act is legislative, we have been directed by the United States Supreme Court to look to whether the act is 'formally legislative[in] character' and whether it bears 'all the hallmarks of traditional legislation'") (citing Bogan, 523 U.S. at 55, 118 S.Ct. at 973).

Applying the Community House factors, we conclude that Pearce's issuance of an order excluding plaintiff from the State Senate Building was not a legislative act. First, the decision was ad hoc in nature. An ad hoc decision is one made with a particular result in mind. Community House, 623 F.3d at 961. Decisions that are directed towards a specified individual "are normally considered to be ad hoc." Id. Pearce argues that the Senate rule requiring the Senate President to maintain order and decorum within the building authorized him to remove plaintiff. This rule is generic. A decision that plaintiff in particular was unruly and needed to be banned is one directed to a specific person and designed to accomplish a particular end. Pearce's order was not related to the creation or implementation of broader policy to promote decorum within the Senate building. It was plaintiff who was no longer permitted inside, not a particular kind of conduct. Second, Pearce's order applied to plaintiff alone. See Kaahumanu v. Cty. of Maui, 315 F.3d 1215, 1222 (9th Cir. 2003) ("When the act in question applies to a few individuals rather than the public at large, legislative immunity is disfavored."). Third, the act was neither formally legislative nor

1 legislative in character. It did not involve the proposal or passage of a bill, ordinance,
2 resolution, rule, vote, or other formal legislative act. He was not, for example, ejected from
3 a legislative hearing for conduct at that hearing. As such, Pearce's order bears none of the
4 hallmarks of traditional legislation.

5 Pearce maintains that he is entitled to immunity "because restricting [p]laintiff was
6 pursuant to the Senate Rules to preserve and maintain decorum and order so that the Arizona
7 State Senate can conduct its business." Reply at 3. An action is not legislative simply
8 because it is authorized by a Senate rule. Accepting plaintiff's allegations as true, at the time
9 of his arrest he was not attending a legislative hearing or legislative session. He was not on
10 the Senate floor. Plaintiff does not allege that Pearce ordered him banned from the building
11 during the February 22, 2011 hearing. Moreover, plaintiff was not merely banned from
12 attending future legislative sessions or hearings, but "was no longer allowed inside the
13 Arizona State Senate building." See Compl. at ¶ 11. Based on these facts, Pearce is not
14 entitled to absolute legislative immunity.

15 Finally, Pearce argues for the first time on reply that to the extent plaintiff asserts
16 claims of false arrest and false imprisonment against him, these claims must be dismissed.
17 We do not consider arguments raised for the first time in a reply. See Turtle Island
18 Restoration Network v. U.S. Dept. of Commerce, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012).

19 Accordingly, **IT IS ORDERED DENYING** defendant Pearce's motion to dismiss
20 (doc. 35).

21 DATED this 23rd day of April, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

- 4 -